UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
TROY J. GRANT,  :
               Plaintiff,  :
                 :
v.  :
                 : **OPINION AND ORDER**
RICHARD THOMAS, Mayor of the City of  :
Mount Vernon; DANIEL P. JONES,  : 18 CV 9601 (VB)
Commissioner of the Department of Buildings,  :
City of Mount Vernon; CITY OF MOUNT  :
VERNON; and JOHN DOE ##1–4,  :
               Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Troy J. Grant brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 against defendants Mayor Richard Thomas, Department of Buildings ("DOB") Commissioner Daniel P. Jones, the City of Mount Vernon (the "City"), and John Doe ##1–4. Plaintiff alleges defendants violated his First Amendment rights by retaliating against him for the lawful exercise or perceived exercise of free speech and political association with former City Mayor Ernest Davis.

      Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #13).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

1

Plaintiff alleges he began working for the City DOB as a building inspector on approximately May 17, 2017. According to the complaint, on August 3, 2018, the DOB lead inspector told plaintiff he needed his help shutting down a shop called "Cupcake Cutie." (Doc. #1 ("Compl.") ¶ 16). Plaintiff previously had been sent to investigate Cupcake Cutie for a "foul odor," but had declared the allegation unfounded. Indeed, according to plaintiff, foul odors did not even fall within the DOB's jurisdiction.

Plaintiff alleges Cupcake Cutie "had been the subject of ongoing disputes between the owners and the government of the City of Mount Vernon, and specifically defendant Mayor Richard Thomas." (Compl. ¶ 17). Plaintiff alleges the husband of one of the two owners of Cupcake Cutie owned and published a popular online and print media magazine called "Black Westchester Magazine," which had been "very critical" of Mayor Thomas. (Id. ¶ 23). Indeed, according to the complaint, on July 17, 2018, one of Cupcake Cutie's two owners posted on Facebook saying she believed the City was harassing her for her husband's statements. And allegedly, after someone voiced opposition to one of his projects at a public hearing, Mayor Thomas threatened the shop, stating, "time to get those cupcakes!" (Id. ¶ 24).

On August 13, 2018, plaintiff and the DOB lead inspector arrived at Cupcake Cutie. Plaintiff remained outside while the lead inspector went inside the shop with police officers. Community members, including Mayor Thomas's political rival, former City Mayor Ernest Davis, arrived in support of the shop. Members of the press also arrived on scene.

According to plaintiff, he has known former Mayor Davis for a long time, so when he encountered Mayor Davis outside the shop, "[t]hey shook hands and spoke for a period of time." (Compl. ¶ 28). This was in front of the press and other people taking photographs and recording video, and plaintiff alleges he noticed his interaction with Mayor Davis was recorded.

Plaintiff and the other City employees left the shop that evening. Plaintiff returned to work the following Monday and again on Tuesday, August 7, "when he was told to leave and that he was fired on the orders of the defendants Commissioner and Mayor." (Compl. ¶ 32). Plaintiff alleges defendant DOB Commissioner Jones signed a letter on which Mayor Thomas was copied, memorializing the termination.

## DISCUSSION

I. <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

II.  First Amendment Claim

Defendants argue plaintiff fails to state a claim for retaliation in violation of his First Amendment rights because plaintiff does not plausibly allege he engaged in protected political association or expression, or that defendants were aware of plaintiff's political association with former Mayor Davis.

The Court disagrees.

A plaintiff asserting retaliation in violation of the First Amendment plausibly must allege "(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech." Montero v. City of Yonkers, 890 F.3d 386, 394 (2d Cir. 2018) (alterations in original) (quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)). "[A] First Amendment retaliation claim may be based on a 'perceived' association, rather than an actual protected association." Hughes v. City of New York, 680 F. App'x 8, 10 (2d Cir. 2017) (summary order) (quoting Heffernan v. City of Paterson, 136 S. Ct. 1412, 1417–19 (2017)).

To satisfy the causal connection requirement, a plaintiff must "allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 195 (2d Cir. 1994) (internal citations omitted). "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." Preschools of Am. (USA), Inc. v. N.Y.C. Dep't of Educ., 2018 WL 4265886, at *4 (S.D.N.Y. Sept. 6, 2018) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999), abrogated on other grounds by Lore v. City of

Syracuse, 670 F.3d 127 (2d Cir. 2012)), appeal docketed, No. 18-2964 (2d Cir. Oct. 5, 2018). A plaintiff may demonstrate causation "indirectly through a showing that the protected activity was followed closely by the adverse action." Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (citing Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004)).

Here, plaintiff sufficiently alleges defendants perceived he was engaged in protected associational activities. Plaintiff alleges defendants perceived him to be associating with former Mayor Davis, Mayor Thomas's rival, "during a tense political standoff" in front of Cupcake Cutie. (Compl. ¶ 39). Moreover, plaintiff alleges Mayor Davis opposed the closing of Cupcake Cutie and that plaintiff had given defendants an additional reason to believe he opposed the closing of Cupcake Cutie—his previous declaration that the City's investigation of a foul odor was unfounded.

In addition, plaintiff sufficiently alleges a causal connection between his termination and his perceived political association with former Mayor Davis. Drawing all inferences in plaintiff's favor at this early stage of the case, as the Court must, the Court finds it plausible that defendants knew of plaintiff's interaction with Mayor Davis because of the publicity regarding the event, the presence of numerous witnesses—including at least one, the DOB lead inspector, who worked for the City—and the fact that plaintiff's interaction with Mayor Davis was recorded. In addition, plaintiff alleges Commissioner Jones signed plaintiff's termination letter and copied Mayor Thomas on the letter, suggesting both were aware of plaintiff's termination when it occurred.

Further, plaintiff alleges he was terminated within one week of the incident. Although there is no bright-line rule for what constitutes temporal proximity in the Second Circuit, one week is well within the range of time in which courts may infer retaliatory motive. See Gorman-

5

Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554–55 (2d Cir. 2001) (collecting cases).

Defendants also argue plaintiff was merely performing his duties as a public employee, and therefore his speech or political association was not constitutionally protected conduct. The Court disagrees. "The mere fact that [plaintiff] was present at the demonstration because his employer assigned him to be there to observe does not compel the conclusion that any speech he engaged in related to the demonstration was pursuant to his employment duties." Hughes v. City of New York, 680 F. App'x at 10–11.

Accordingly, plaintiff's Section 1983 claim for retaliation in violation of his First Amendment rights may proceed.

III.    Monell Claim

Defendants argue the Court should dismiss plaintiff's Section 1983 claim against the City pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), because plaintiff fails to allege an underlying constitutional violation. As the Court finds plaintiff does state a Section 1983 claim for retaliation, plaintiff's claim against the City may proceed.

IV.    Personal Involvement

The Court also rejects defendants' argument that plaintiff fails to allege sufficiently Mayor Thomas's personal involvement in the alleged unlawful retaliation.

To state a Section 1983 claim, plaintiff must allege defendants' personal involvement in an alleged deprivation of plaintiff's constitutional rights. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013). In other words, plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal citation omitted).[1] Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff sufficiently alleges Mayor Thomas's personal involvement in the constitutional violation. Plaintiff alleges Mayor Thomas's beef with Cupcake Cutie was the impetus for the political standoff in front of the shop and the very reason why plaintiff's alleged perceived relationship with Mayor Davis was problematic. In addition, Mayor Thomas was copied on plaintiff's termination letter.

Accordingly, plaintiff's Section 1983 claim against Mayor Thomas may proceed.

V. Qualified Immunity

Defendants argue Mayor Thomas and Commissioner Jones are entitled to qualified immunity.

The Court disagrees.

---

[1] After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). The Second Circuit has yet to resolve this dispute. Id.

7

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal citations omitted). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

Here, plaintiff sufficiently alleges defendants violated his First Amendment rights, which were clearly established at the time, and it was not objectively reasonable for defendants to believe they could lawfully violate those rights. Accordingly, dismissing plaintiff's First Amendment claim at this stage is inappropriate. However, defendants may renew their argument after the completion of discovery.

Accordingly, Mayor Thomas and Commissioner Jones are not entitled to qualified immunity at this time.

VI. Punitive Damages

Defendants argue the Court should strike plaintiff's claim for punitive damages against the City because a municipality cannot be liable for punitive damages under Section 1983.

Plaintiff fails to oppose defendants' argument and therefore the Court deems plaintiff's claim for punitive damages against the City abandoned. See M.M. ex rel. J.M. v. N.Y.C. Dep't of Educ., 2010 WL 2985477, at *6 (S.D.N.Y. July 27, 2010) (collecting cases).

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART. All claims shall proceed except for plaintiff's punitive damages claim.

Defendants shall file an answer by June 3, 2019.

The Clerk is instructed to terminate the motion. (Doc. #13).

Dated: May 20, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge